1  The Law Offices of Leon Ozeran
2  Leon Ozeran, Esq., CA Bar No.: 296071
3  8200 Wilshire Blvd.
   Beverly Hills, CA 90211
4  Tel: (310) 461-3730;
   Email: ozeranlaw@gmail.com
5  Attorney for Plaintiff

6

7              **UNITED STATES DISTRICT COURT**

8              **CENTRAL DISTRICT OF CALIFORNIA**

9

10                                    **CLASS ACTION**

11                          **Case No.:**

12  VINCENZO GRECO                **JURY DEMANDED**

13              Plaintiff,

14      v.                     1. **CONVERSION;**
                               2. **PROMISSORY FRAUD;**
15  BMW of NORTH AMERICA, LLC ;   3. **UNFAIR BUSINESS PRACTICES**
16  BMW FS LLC;                      **IN VIOLATION OF BUSINESS &**
    MERCEDES BENZ USA, LLC;         **PROFESSIONAL CODE §17200;**
17  NISSAN NORTH AMERICA;        4. **FALSE ADVERTISING IN**
18  AUDI OF USA;                    **VIOLATION OF BUS. &**
    AUDI FINANCIAL SERVICES;        **PROFESSIONAL CODE §17500 ;**
19  VOLKSWAGEN OF USA;           5. **INTERFERENCE WITH**
20  VW LEASING INC. (VCI), et al.    **POTENTIAL ECONOMIC**
                                     **ADVANTAGE;**
21              Defendants.       6. **BREACH OF IMPLIED**
22  _____      **COVENANT OF GOOD FAITH**
                                     **& FAIR DEALING;**
23                               7. **BREACH OF CONTRACT;**
24                               8. **VIOLATION OF CALIFORNIA**
                                     **MOSCONE VEHICLE LEASING**
25                                   **ACT Sec. 2987 *et seq.***
26                               9.  **INFLICTION OF EMOTIONAL**
                                     **DISTRESS.**
27

28

## **INTRODUCTION**

1.      Plaintiff VINCENZO G. GRECO ("Plaintiff") individual, and on behalf of all others similarly situated, by and through his attorney, hereby brings this Collective and Class Action Complaint against BMW of NORTH AMERICA, LLC BMW FS LLC; et al.; MERCEDES BENZ USA, LLC; and NISSAN NORTH AMERICA, INC. (collectively "Defendants") seeking redress for Defendants' deceptive and unfair practices as it relates to the Motor Vehicle Lease Agreement (MVLA) terms and denial of Plaintiff's and other lessees' equity in cases of a total loss, as well as an Injunctive Relief to prevent Defendants from continuing such unfair and fraudulent practice.

2.      Defendants implemented a policy of denying lessees the overage of the insurance policy payout (i.e., equity) in cases of a total loss of their vehicles due to an auto accident, theft, or natural disaster.

3.      On 08/25/2023, Plaintiff entered a Motor Vehicle Lease Agreement (Close-End) (**MVLA**) to lease a 2023 BMW M2 from BMW (Dealer) for a 36-month Close-End Lease with the scheduled maturity date of 08/25/2026.   Additionally, Plaintiff purchased his insurance policy from the third party insurance company as was required by BMW as a condition of leasing the vehicle, the 2023 BMW M2 Coupe. On November 25, 2023, Plaintiff's vehicle was declared a total loss due to an accident.  The Insurance Company agreed to pay out the car's market value which was significantly more than the outstanding balance of the Plaintiff's account.

4.      As a routine practice, if a vehicle is involved in an accident, the lessee is responsible for fixing the vehicle and dealing directly with his insurance company. In this case, however, after Defendants were notified that the accident resulted in a total loss of the vehicle, they canceled Plaintiff's attempts to exercise his Purchase Option stating to Plaintiff that they would be directly dealing with the Insurance

Company, demanding that the entire amount be paid to BMWFS, thus denying Plaintiff his equity.

5.     It is alleged that Defendants enacted such a practice to increase its profitability by diverting Plaintiff's equity.  It is alleged that Defendants engaged in the deceptive and fraudulent practice of misrepresenting the Agreement's language to justify a denial of lessees' Purchase Option.

## PARTIES

6.     BMW North America, LLC ("BMW NA" or "BMW") is a Delaware Limited Liability Company with its principal place of business located in Woodcliff Lake, New Jersey.  BMW is one of the largest car manufacturers in the world.  It has thousands of dealerships worldwide, including multiple dealerships in California.

7.     BMW FINANCIAL SERVICES NA, LLC ("BMWFS") is a financial arm of BMW NA and is a servicer of Lease Agreements for BMW NA.  BMWFS handles all financial operations in connection with the Lease Agreements.  In this case, the pay-off amount for the total loss of the Plaintiff's vehicle was forwarded by the Insurance Company to BMWFS.

8.     Defendant BMW NA operates through numerous entities performing different tasks.  These entities are not independent but wholly owned and controlled by BMW NA.  BMWFS is a wholly owned subsidiary of BMWNA, and its entire business activity is designed to accommodate and benefit BMW NA.  It does not have any other clients or duties.  All such entities, including the BMWFS, were agents or employees of the BMW NA and were acting within the scope and course of their agency and employment and with the direction, permission, and consent of the BMW NA; thus, each of them is responsible in some manner for the events and happenings herein.

9.      All other Defendants are major car manufacturers employing the same policies and committing the same acts as BMW USA, thus committing the same offenses.

10.   Plaintiff does not know the true names and capacities of all entities as mentioned above, whether corporate, partnership, associate, individual, or other Defendants named herein as Does 1 through 20.  Plaintiff will seek to leave to amend this Complaint to set forth the true names and capacities of the fictitiously named Defendants together with appropriate charging allegations when ascertained.

11.   All acts of corporate employees, as alleged, were authorized or ratified by an officer, director, or managing agent of the corporate employer.

12.   Each Defendant, whether actual or fictitiously named herein, was the principal, agent, or employee of Defendants and/or Dealer and in acting as such principal or within the course and scope of such employment or agency, took some part in the acts and omissions hereinafter set forth because of which each Defendant is liable to Plaintiff for the relief prayed for herein.

## JURISDICTION AND VENUE

13.   BMW is one of the largest financial companies in the US. It has thousands of affiliates throughout the USA and works with multiple dealerships in California. Thus, BMW has purposefully availed itself of the privilege of conducting activities in the State of California and has established minimum contacts sufficient to confer jurisdiction over them, and the assumption of jurisdiction over BMW will not offend traditional notions of fair play and substantial justice and is consistent with the Constitutional requirements of due process.

14.   This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1332(a).

15.   The matter in controversy exceeds $75,000.00, exclusive of interest and costs, and the Plaintiff and Defendants are citizens of different states.

16.   The claims asserted by the putative class, when aggregated according to 28 U.S.C. § 1332(d)(6), exceed the amount of $5,000,000 as required by 28 U.S.C. § 1332(d)(2). At least one member of the California Class is a citizen of a State different from at least one defendant within the meaning of 28 U.S.C. § 1332(d)(2)(A).

17.  The number of members of all putative classes alleged exceeds 100 as required by 28 U.S.C. §1332(d)(5)(B).

18.  Defendants are not States, State officials, or other governmental entities under the definition of 28 U.S.C. § 1332(d)(5)(A).

19.  Venue is proper in this District pursuant to 28 U.S.C. §1391(a) because a substantial part of the events or omissions giving rise to the claims occurred in the Central District of California.

20.  This Court has supplemental jurisdiction over state claims pursuant to 28 U.S.C. §1367 because the claims arise from a common nucleus of operative facts. Thus, adjudication of both state and federal claims furthers the interests of the judicial economy.

Accordingly, this Court has jurisdiction over the parties and the subject matter of this action, and the venue is proper.

## **GENERAL ALLEGATIONS**

21.    It is a well-known fact that for the last few years, due to inflation and difficulties with the manufacturing and delivery of new cars, the demand for pre-owned (used) cars has risen dramatically.  As a result of rising demand, the value of used cars has increased.  Leased vehicles' values have begun to exceed the residual values specified in the original car lease agreements.

22.    As a result of this increased equity, in the case of a total loss of the vehicle, the insurance companies have been appraising the replacement market value higher than

the remaining loan amount of the leased vehicle, i.e., creating equity.

Such an increase in residual value has created a situation where lessees have found themselves in possession of vehicles whose market value is significantly more than the amounts owed on their respective leases.

23.     The equity was created by the appreciation of the vehicle value. As, under the Lease, the Lessee can become an owner at any time by exercising his Purchase Option, the newly created appreciated equity shall belong to the lessee.

## PLAINTIFF'S EXPERIENCE

24.     On 08/25/2023, Plaintiff entered a Motor Vehicle Lease Agreement (Close-End) (**MVLA**) to lease a 2023 BMW M2 from BMW (Dealer) for a 36-month Close-End Lease with the scheduled maturity date of 08/25/2026.

25.     However, on November 25, 2023, Plaintiff's car was destroyed in an auto accident that the Insurance declared a total loss.

26.     Due to the factors mentioned above of used car market appreciation, at the time of the accident, the vehicle's market value was determined by Insurance to be about **$15,000 higher** than the residual balance on Plaintiff's loan**,** thus representing Plaintiff's equity.

27.     Despite Plaintiff's objections, Insurance complied with BMW's demands and forwarded the entire amount to BMW.

28.     Plaintiff made numerous requests to pay off the balance to receive the car's Title.   BMW refused to allow paying off the balance stating that it "elected to terminate" the Lease Agreement.  In communications with Plaintiff, BMW stated that because the vehicle was a total loss, BMW has the right to terminate the Agreement and Plaintiff's Purchase Option, which he paid separately at the time of entering the Agreement.

29.     The denial of Plaintiff's Purchase Option is in violation of the Contract law and the Lease Agreement because it represents "an option," which is a separate

contract and for which Plaintiff paid a consideration by paying a higher price for leasing the car vs. buying.  Also, the **Purchase Option $300** fee is identified explicitly in Sec. 12 of the Lease.   Thus, the Purchase Option belongs to Plaintiff and cannot be unilaterally canceled by BMW.

### GENERAL POLICIES OF CAR LEASING CONTRACT V. CAR RENTAL CONTRACT.

30.     In the case of **a Car Rental contract**:  The Rental Company (like Avis, Budget, etc…) never transfers the car title to the Renter because it is NOT obligated to sell the car at any point.  The company retains ownership the entire time.  When entering into the Rental Contract, the Renter pays only for the period of time it rents the car – possibly several days or so.  There is an amount the Renter agrees to pay when renting a car, and he is not responsible for any repairs.  The insurance is paid only for the rent period (days) and is usually provided by a credit card.  There is no final payment to the Rental Company or option to buy the car anytime.  The Renter has no ownership rights or equity, or even an expectation of either, regardless of how much he pays.  He rents the car for a few days and then drops it off at the proper location at the end of the rental period.

31.     **In the case of a Car Leasing Agreement** (MVLA):  When leasing a car with a **CLOSE-END LEASE**, the Lessor follows a procedure similar to buying the vehicle.  The difference is that Lessor **has the Option** _to **buy the car**_ **or** _**return the vehicle**_ in place of the remaining balance at the end of the lease and "walk away."  The contractual flexibility of the Purchase Option is a significant difference.  Under the circumstances, Plaintiff agreed to pay more for leasing (vs. buying) and paid $300 "Purchase Option Fee" as specified in Sec. 12 of the Lease.

32.     The fact that the finance company holds the title in the name of its subsidiary, a Vehicle Trust (**VT**), is only temporary and for accommodation only. The vehicle represents collateral for the loan to secure the lessee's payments until the

final payment.  Thus, the Vehicle Trust is not a "true" owner but rather a collateral holder to assure payments.  The Lessee is a Real Owner in Interest as he can become an owner at any time. The Vehicle Trust must transfer the title to Lessee immediately when the loan is paid off.  Lessor has no discretion and cannot refuse to transfer it to Lessee if Lessee wants to exercise his Purchase Option.

33.     Under Section 2987 of the California Civil Code (the Moscone Vehicle Leasing Act), the consumer is entitled to end the lease at any time and purchase the vehicle during the lease term or at the end.  The Act governs transactions between vehicle lessors and lessees and limits the amount of charges the lessee can be charged upon early termination.

34.     Cal. Civil Code § 2987 (Moscone Act) discusses a "…lessee's right to early termination of lease contract; conditions; notice."  Under Cal. Civil Code § 2987, consumers have the right to terminate their lease early at any time and for any reason as long as the money owed to the lessor is sufficient to cover the lease payoff amount, including penalty for early termination.  In other words, the Lessee can always exercise his Purchase Option and end his Lease. The Purchase Option always exists because it was paid for at the inception of the Lease.

35.     The Purchase Option is also clearly stated in the **Lease Agreement Section 12**: Also, **Section 30** of the Lease provides that Lessee has a "**right to purchase a vehicle ASIS, WHERE-IS**" and/or may terminate this Lease at **ANY TIME** to buy the vehicle subject to all outstanding charges.

36.     The terms of the MVLA contradict BMW's false statements denying Lessee's right to exercise his Purchase Option in case of a total loss.

37.     BMW adopted such a deceptive scheme to prevent lessees from obtaining equity part of the payouts made by the Insurance Companies.

## TOLLING

### A.  Discovery Rule Tolling

38.     Class Members had no way of knowing about Defendants' deceptive practices concerning the truthfulness of Defendants' statements of state and contractual prohibitions of the third-party dealers.

39.     Within the period of any applicable statutes of limitation, Plaintiff and the other Class Members could not have discovered through the exercise of reasonable diligence that Defendants were hiding their true practices. The operation of the discovery rule has tolled all applicable statutes of limitation.

### B.  Fraudulent Concealment Tolling

40.     All applicable statutes of limitation have also been tolled by Defendants' knowing and active fraudulent concealment and denial of the facts alleged herein throughout the period relevant to this action.

### C.  Estoppel

41.     Defendants were under a continuous duty to disclose to Plaintiff and other Class Members the true character, quality, and nature of their Lease Agreements and pay-off policies, including Defendants' claim that in case of a total loss, the lessees would lose their right to purchase their vehicles.

42.     Defendants knowingly, affirmatively, and actively concealed true facts from consumers.

43.     Based on the foregoing, Defendants are estopped from relying on any statute of limitations to defend this action.

### EQUITABLE RELIEF

44.     Absent an equitable injunction enjoining Defendants' conduct alleged herein, Plaintiff, the Class, and the public will be irreparably harmed and denied an effective and complete remedy because they face the real and tangible threat of future harm emanating from Defendants' ongoing conduct, which cannot be remedied with monetary damages.

45.     Plaintiff does not know at this juncture whether the Court will accept a model for legal damages that Plaintiff will proffer in the future at the appropriate time or whether the Court will find that any such model adequately compensates Plaintiff's and the Class's losses. Accordingly, Plaintiff sets forth alternate claims for legal damages and equitable restitution.

46.     Similarly, as set forth herein, Defendants' material deceit and misrepresentations made regarding the ability of Lessees to purchase the vehicle in case of the total loss are ongoing and, accordingly, represent a continuing threat to Plaintiff, the Class, and members of the general public who have not yet (but who are likely to) come into contact with Defendants' misrepresentations, and who risk becoming injured thereby.  Plaintiff seeks, on behalf of himself, the Class, and the general public, injunctions: 1) prohibiting Defendants from denying lessees the rights to exercise his Purchase Option after the total loss; 2) prohibiting Defendants from claiming and accepting funds over the remaining balances on lessees' accounts.

## CLASS ACTION ALLEGATIONS

47.     Plaintiff brings this action as a class action on his behalf and behalf of all others similarly situated under Federal Rule of Civil Procedure 23, for declaratory judgment, restitution, injunctive relief, damages, costs, and attorneys' fees.

48.     Plaintiff brings this class action lawsuit on behalf of himself and the proposed class of similarly situated persons, pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure.  Plaintiff seeks to represent the following group of similarly situated persons (the "Class"), defined as follows:

**All persons who leased vehicles under Defendants' Lease Agreement and suffered a total loss of their vehicles and then were denied by Defendants their Purchase Option under the Terms of the Lease Agreement, thus preventing them from receiving their equity.**

The Class includes the following Subclasses:

a)    **Subclass A**:  All persons who leased vehicles under the Defendants' Lease Agreement in California and suffered a total loss of their vehicles and then were denied by Defendants their purchase option under the terms of the Lease Agreement, thus preventing them from receiving their equity in vehicles.

b)    **Subclass B**:  All persons who leased vehicles under the Defendants' Lease Agreement in other States of the USA suffered a total loss of their vehicles and were denied by Defendants their purchase option under the terms of the Lease Agreement, and each lessee's state's Consumer Protection Vehicle Leasing Act, thus preventing them from receiving an equity portion in their vehicles. Plaintiff reserves the right to amend or modify the Class and Subclass definitions with more significance or further division into subclasses or limitations to particular issues.

49.    The Class members are so numerous that the joinder of all members is impracticable.  On information and belief, there are in excess of a thousand members of the Class.  Through Defendants' records, Discovery will reveal the approximate number of Class members.  However, the class is estimated to be greater than 100 individuals, the identity of such membership is readily ascertainable, and the total damages will exceed $5,000.000.

50.    Common questions of law and fact exist to all members of the Class, which predominate over any questions that may affect individual Class members. Among the questions of law and fact common to the Class are the following:

i.    Whether Defendants' policy of prohibiting lessees from exercising their Purchase Option after the total loss accidents caused Plaintiff and the Class to suffer economic harm;

ii.    Whether Defendants' actions were in violation of the California Moscone Vehicle Leasing Act Section 2987 or similar Consumer Protection Statutes.

iii.    Whether Defendants violated California Business and Professions Code §§17200, et seq.;

iv.     Whether Defendants' misrepresentations and deceit are material to reasonable consumers;

v.     Whether Plaintiffs and the Class are entitled to restitution or damages and if so, the court may establish that the appropriate measure of damages is the difference between the Pay-Off amount and the Payout amount as determined by insurance companies;

vi.     Whether Defendants' actions violate Federal and California laws invoked herein;

vii.     Whether Defendants engaged in the behavior knowingly, fraudulently, recklessly, or negligently; and,

viii.     Whether Class and Subclass members are entitled to payment of actual, incidental, consequential, exemplary, and/or statutory damages plus interest thereon, and if so, what is the nature of such relief?

51.     Plaintiff knows of no difficulty that will be encountered in managing this litigation that would preclude its maintenance as a class action.

52.     The prosecution of separate actions by individual members of the Class would run the risk of inconsistent or varying adjudications, which might establish incompatible standards of conduct for Defendants.  Prosecution as a class action will eliminate the possibility of repetitious litigation.

53.     The questions of law and fact common to the members of the Class predominate over any questions that may affect only individual members.

54.     Plaintiff will fairly and adequately represent and protect the interests of the Class members.  Plaintiff is a Class member described herein and does not have interests antagonistic to or in conflict with, the other Class members.

55.     The Class is readily definable, and prosecution as a class action will eliminate the possibility of duplicative litigation while also providing redress for claims that would otherwise be too small to support the expense of individual complex litigation.

56.    Class action is superior to other available methods for the fair and efficient adjudication of this controversy. Because the monetary damages suffered by individual Class members are relatively small, the expense and burden of individual litigation make it impossible for them to seek redress for the wrongful conduct asserted herein. If Class treatment of these claims is unavailable, Defendants would likely continue their wrongful conduct, unjustly retain improperly obtained revenues, and/or otherwise escape liability for their wrongdoing.

57.    Defendants were unjustly enriched to the detriment of the Class, entitling the Class to disgorgement of all monies resulting therefrom.

58.    The Class is entitled to restitution and/or disgorgement, in addition to, or as a substitute for, damages under California law.

59.    Plaintiff's claims are typical of the Class because all members were injured and may continue to be injured in the same manner by Defendant's unlawful, anticompetitive, and inequitable methods, acts, and practices.

60.    Unless addressed, the Defendants' practices will continue, and the Class will be further harmed in the future.

61.    The class damages are similar and ubiquitous.

## FIRST CAUSE OF ACTION

### Conversion

62.    Plaintiff hereby refers to and incorporates all above paragraphs by reference, as though fully set forth herein.

63.    "Conversion is described as the wrongful exercise of dominion over the personal property of another. . . . The basic elements of the tort are (1) the plaintiff's ownership or right to possession of the personal property; (2) BMW's disposition of the property in a manner that is inconsistent with the plaintiff's property rights; and (3) resulting damages."  CACI Sec. 2100.

64.     In this case, Plaintiff entered into a valid contractual agreement with the Dealer.

65.     The market value of BMW was determined by insurance at this time, and it exceeded the outstanding balance on the lease agreement, leaving Lessee about **$15,000 dollars** in equity.

66.     Despite attempts by Plaintiff to persuade BMW to refund the equity portion, BMW refuses to do so.  The entire amount is still in BMW's possession.

67.     Because the equity portion was never refunded, Plaintiff suffered economic harm.

68.     BMW acted tortuously, intentionally, and fraudulently.

69.     It was reasonably foreseeable to BMW that acting in such a manner would expose people, such as Plaintiff.  In fact, the Plaintiff suffered harm.

## SECOND CAUSE OF ACTION

### Promissory Fraud, Misrepresentation, Deceit

70.     Plaintiff hereby refers to and incorporates all above paragraphs by reference, as though fully set forth herein.

71.     On August 25, 2023, Plaintiff, Vincenzo Greco, came to BMW of San Francisco Dealership to get a car, either buying or leasing.  Plaintiff held multiple conversations with the salespeople at the dealership, comparing both options. The flexibility of the Leasing Option of buying or walking away from the lease was essential to Plaintiff.

72.     Salespeople told Plaintiff that the option cost was included in the total price of the Lease, which was about 10%. That is why leasing is more expensive than buying, but leasing gives that "flexibility of choice."   Additionally, Plaintiff was advised that he would have to pay $300 specifically for the Purchase Option as stated in  **Sec. 12** of the Lease. (p.2 of the Lease).

73.      Salespeople at the dealership assured Plaintiff that he could terminate the Lease earlier and buy the car at any time or wait until the end of the Lease.

74.        There was no mention of any restrictions, limitations, total loss, theft, hurricane, or any other situations, such as a total loss, when BMW could terminate Plaintiff's option and Plaintiff could not exercise it.

75. Those statements and assurances by BMW were false, and sales personnel knew or should have known that they were misrepresenting the truth.

76.      These deceitful statements and assurances were made to induce Plaintiff into leasing the vehicle, and Plaintiff did lease the car based on these representations.

77.      Plaintiff would not have entered the Lease had Plaintiff known that the purchase option could be canceled unilaterally.  Salespeople and all of them intentionally misrepresented directly and/or by omission the fact that Option can be canceled unilaterally under certain circumstances because their motive was to induce Plaintiff to sign the Lease.

78.      Plaintiff detrimentally relied on BMW's deceit and was harmed by that.

79.      BMW's actions were a substantial factor in causing such harm.

## **THIRD CAUSE OF ACTION**

### **Unfair Business Practices in Violation of**

### **Business & Professional Code § 17200 (UCL).**

80.      Plaintiff hereby refers to and incorporates all above paragraphs by reference, as though fully set forth herein.

81.      Plaintiff suffered an economic injury due to BMW's policy.

82.      Under the UCL, a plaintiff has standing by establishing he or she surrendered in a transaction more or acquired in a transaction less than he or she otherwise would have.  Cal. Bus. & Prof. Code § 17204.

83.      BMW committed acts of unfair business practice, as defined by Sections 17200, *et seq.* of the California Business and Professions Code.

84.     The Unfair prong of the UCL creates a cause of action for business practice that is unfair even if not proscribed by some other law.  Here, BMW's practice was unfair to Plaintiff denying their right to enjoy the benefit of the appreciation of leased vehicles.

85.     BMW's practices mentioned above, which BMW continues to use to receive significant financial gain, also constitute unlawful competition.

86.     The Fraudulent prong: BMW engaged in the deceptive practice of misleading consumers to forfeit their equity.

87.     The Unlawful prong: In misleading consumers regarding their rights to receive equity in vehicles, BMW violated other state and federal laws related to misrepresentation. It is unlawful for BMW to be engaged in the deceptive practice of misleading consumers to obtain more profit.

88.     Furthermore, in its communications describing the insurance payoff procedure, BMW made misleading and deceitful statements related to the alleged Lease Agreement's provisions.

89.     Those statements were false and misleading.  Such statements caused Plaintiff to be deprived of money and/or property to which she had a cognizable claim.

90.     Plaintiff detrimentally relied on statements made by BMW personnel, thus, suffering an injury in fact and economic losses.

91.     Business & Professions Code §17200 states, "….unfair competition shall mean and include any unlawful or fraudulent business act or practice."  The acts of omission, and misrepresentations, together with practices of deceit by BMW, as alleged herein, constitute a continuous and continuing course of conduct of unfair competition by means of unfair; unlawful, and/or fraudulent business acts or practices within the meaning of California Business and Professions Code, section 17200, *et seq.*"

92. There were reasonably available alternatives to further BMW's legitimate business interests other than the conduct described above.

93. Plaintiff was misled and coerced into surrendering his rights to the BMW.

94. BMW violated the UCL by knowingly and intentionally refusing to allow lessees to exercise his Purchase Option contrary to the provision in an Agreement Sec. 30 allowing doing that **ASIS, WHERE-IS.**

95. An unfair business practice occurs when it offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. Here, BMW's actions fit under such a definition. BMW coerced Plaintiff to surrender rights under the Lease to BMW, thus, depriving him of equity.

96. As a direct and proximate result of such actions, Plaintiff has suffered, and continues to suffer, injury in fact and has lost money and/or property due to such false, deceptive, and misleading practices.

97. BMW has been and continues to be unjustly enriched due to its wrongful conduct.

98. Plaintiff is accordingly entitled to equitable relief, including restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that BMW may have obtained as a result of such business practices.

## FOURTH CAUSE OF ACTION

### False Advertising In Violation Of

### Business & Professional Code § 17500.

99. Plaintiff hereby refers to and incorporates all above paragraphs by reference, as though fully set forth herein.

100. False advertising in the conduct of any business, trade, or commerce in California is unlawful. California false advertising law bars "any advertising device … which is untrue or misleading." To prevail on a claim under the false advertising

law, Plaintiff must show that "members are the public are likely to be deceived" and must do so as adjudged through the eyes of "reasonable consumer."

101.    In determining whether any advertising is misleading, there shall be taken into account not only representations made by a statement, word, design, device, sound, or any combination thereof but also the extent to which the advertising fails to reveal facts material in the light of such representations concerning the commodity or employment to which the advertising relates under the conditions prescribed in the said advertisement, or under such conditions as are customary.

102.    In determining whether a representation or omission is a deceptive act, the test is whether such an act is likely to mislead a reasonable consumer acting reasonably under the circumstances.  Defendants' practice of hiding the fact that the Purchase Option purchased by Plaintiff could be voided unilaterally by the Defendants without compensation was designed to hide a material fact that was important to Plaintiff when he was considering whether to enter the Agreement. Such practice was misleading and Defendants expected that Plaintiff would be misled into signing the Agreement.  Plaintiff was, in fact, misled by such practice.

103.    Here, the dealer used a strategy of deception to omit and conceal the material fact that he knew would cause him to walk away from entering the contract. Because of the Defendants' acts of false advertising, Plaintiff entered the Lease and suffered an injury as a result.  Plaintiff is entitled to damages and attorneys' fees with treble damages.

## <u>FIFTH CAUSE OF ACTION</u>

### Interference with Potential Economic Advantage and Contractual Relations

104.    Plaintiff hereby refers to and incorporates all above paragraphs by reference, as though fully set forth herein.

105.    Intentional interference with contractual relations occurs when a party intentionally and by improper means damages Plaintiff's contractual or other business relationships.

106.    In this case, Plaintiff entered into a valid contractual agreement with the Insurance Company for the vehicle policy and fully paid the premium.

107.    BMW was aware of the existence of the Insurance Contract between Plaintiff and the Insurance Company because BMW is the one that required insurance.

108.    However, after a total loss, BMW interfered with a contractual relationship and provided a fraudulent excessive payoff demand coercing the Insurance Company to forward the entire payment to BMW.

109.    Improper means are independently actionable actions such as violations of federal or state law or unethical business practices, including fraudulent payoff demand.

110.    Plaintiff individually purchased an insurance policy and paid the entire premium. BMW was aware of an economic relationship with the Insurance Company as Plaintiff was a co-beneficiary of the policy together with BMW.

111.    BMW's business practice was explicitly designed to disrupt Plaintiff's business relationships with the Insurance Company to secure the payout to BMW.

112.    Because Plaintiff was denied equity, he suffered economic harm.

113.    As a result of their actions, BMW received more money than they were entitled to under the terms of the Lease.

114.    It was reasonably foreseeable by BMW that acting in such a manner would cause Plaintiff harm.  In fact, Plaintiff did suffer harm.

## SIXTH CAUSE OF ACTION

### Breach of Contract

115.    Plaintiff hereby refers to and incorporates all the above paragraphs by reference, as though fully set forth herein.

116.    Plaintiff entered into a contract with BMW to lease his vehicle.  He decided to pay a higher price choosing Lease vs. Buying because he wanted the flexibility to buy the vehicle or return it and "walk away."

117.    Additionally, Plaintiff paid $300 for the "Purchase Option" as specified in Sec. 12 of the Lease.

118.    As stated in the Lease Agreement **Section 30**, the Lessee has a right <u>to buy out (exercise the purchase option) a vehicle ASIS, WHERE-IS</u>.  **Section 31** provides that Lessee may <u>terminate this Lease at ANY TIME</u>.  Because the Lease Agreement includes the Purchase Option, it provides the Lessee the absolute right of ownership at any time, regardless of when the request is made or the vehicle's condition.

119.    Nonetheless, BMW denied Plaintiff his contractual rights by refusing to honor the Purchase Option.

120.    Thus, BMW breached the terms of the Lease Agreement.

121.    Plaintiff was harmed by BMW's conduct.

## SEVENTH CAUSE OF ACTION

### Breach of Implied Covenant of Good Faith & Fair Dealing in Contract

122.    Plaintiff hereby refers to and incorporates all above paragraphs by reference, as though fully set forth herein.

123.    Every contract or agreement has an implied promise of good faith and fair dealing.  This means that each party will not do anything to unfairly interfere with the right of any other party to receive the benefits of the contract; however, the implied promise of good faith and fair dealing cannot create obligations inconsistent with the contract's terms.

124.    However, as soon as BMW discovered that the Insurance payout was higher than an outstanding balance, it modified its policy of dealing with the total loss situation creating the condition to prevent Plaintiff from exercising his Option.

125.    In its actions, BMW breached the implied Lease covenant of good faith.

126.    Plaintiff was harmed by BMW's conduct.

## EIGHTH CAUSE OF ACTION

### Violation of California Moscone Vehicle Leasing Act Section 2987

127.    Plaintiff hereby refers to and incorporates all above paragraphs by reference, as though fully set forth herein.

128.    The legislature enacted Moscone Act to protect Lessees from abuses by Leasing Companies by prohibiting overcharging Lessees with unfair and unreasonable charges.  Moscone Act Cal. Civil Code § 2987 discusses a "...**lessee's right to early termination of lease contract; conditions; notice." Under Cal. Civil Code § 2987, consumers have the right to terminate their lease early at any time and for any reason as long as the money owed to the lessor is sufficient to cover the payoff amount of the lease.  This right to terminate consists of the Right to Buy and Return at will.**

129.    After the accident, Plaintiff contacted BMW and requested to exercise his Purchase Option.  BMW denied Plaintiff's request stating that Plaintiff lost his Purchase Option because it was a total loss.  In doing that, BMW effectively canceled Plaintiff's Purchase Option without compensation.

130.    BMW's actions were deceptive, fraudulent, and unfair. Taking a valuable consideration such as a paid Purchase Option by unilateral cancellation and without compensation represents an unjust and unreasonable charge violating the Moscone Act.

132.    Because Plaintiff was denied his equity, he suffered economic harm.

133.    BMW acted tortuously, intentionally, and deceitfully.

134.    It was reasonably foreseeable by BMW that acting in such a manner would expose people, such as Plaintiff, to harm.  In fact, the plaintiff did suffer harm.

135.    Plaintiff is entitled to reasonable attorney's fees under the Moscone Act.

## NINTH CAUSE OF ACTION

**Infliction of Emotional Distress**

136.    Plaintiff hereby refers to and incorporates all the above paragraphs by reference, as though fully set forth herein.

137.    California courts have also acknowledged the right to recover damages for emotional distress alone, without consequent physical injuries, in cases involving extreme and outrageous intentional invasions of one's mental and emotional tranquility. (*State Rubbish etc. Assn. v. Siliznoff* (1952) 38 Cal.2d 330, 336-337).

138.    BMW's actions were outrageous, intentional, and with reckless disregard of the probability of causing emotional distress.

139.    As the result of BMW's actions, Plaintiff suffered severe mental anguish and severe other psychological distress.

140.   BMW's actions were actual and proximate causation of emotional distress by the Respondents' outrageous conduct.  (*Alcorn v Anbro Engineering (1970). 2 Cal.3d 493,497-498.*)

141.   Plaintiff was harmed by BMW's conduct.

## DAMAGES

142.    BMW has been unjustly enriched due to its wrongful conduct and unfair coercion tactics. Plaintiff, accordingly, is entitled to equitable relief, including restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that BMW may have obtained as a result of such business practices.

143.   As the direct and proximate results of BMW's wrongful acts, Plaintiff has suffered general, special, incidental, and consequential damages as would be anticipated to arise under the circumstances.  In addition, because of the alleged intentional fraud, concealment, misrepresentation, and deceit, Plaintiff is entitled to punitive damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that the Arbitrator enter judgment against Defendants' as follows:

1.   That judgment may be entered in favor of Plaintiff and against BMW;

2.   That the Court adjudge and decree that BMW's conduct, deceit, or combination violates the Unfair Competition Law, section 17200, et seq. of the Business & Professions Code;

3.   An award of economic damages, trebled, consequential damages, and all other damages, including emotional distress, loss of time, etc., according to proof;

4.   An award of compensatory and punitive damages in an amount to be determined at trial;

5.   An award of restitution, including disgorgement of profits obtained by BMW as a result of their acts of unjust enrichment or any acts in violation of state antitrust or consumer protection statutes and laws, including section 17000 of the Business & Professions Code;

6.   An award of pre-and post-judgment interest, and that the interest is awarded at the highest legal rate from and after the date of the accident;

7.   Attorney's fees and costs of suit incurred and;

8. The Court grants other legal and equitable relief as it may deem just and proper under the circumstances, including such other relief as the Court may deem just and fair.

Dated: 04/16/2024                    */s/ Leon Ozeran*
                                     Attorney for Plaintiff

                                     The Law Offices of Leon Ozeran
                                     Leon Ozeran, Esq., CA Bar No.: 296071
                                     8200 Wilshire Blvd., Suite 400
                                     Beverly Hills, CA 90211
                                     Tel: (310) 461-3730;
                                     ozeranlaw@gmail.com